IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| THERESA MUSCARELLA, | ) | CIVIL ACTION 4:10-cv-3038-TER |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| MICHAEL J. ASTRUE, | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is an action brought pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. Section 405(g), to obtain judicial review of a "final decision" of the Commissioner of Social Security, denying Plaintiff's claim for Disability Insurance Benefits (DIB). The only issues before the Court are whether the findings of fact are supported by substantial evidence and whether proper legal standards have been applied. This case was referred to the undersigned for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), (D.S.C.).

### I.  PROCEDURAL HISTORY

Theresa Muscarella ("Plaintiff" or "Claimant") filed an application for DIB on January 23, 2008, alleging inability to work since November 2, 2000, due to fibromyalgia, degenerative disc disease, spinal stenosis, osteoarthritis, rheumatoid arthritis, and being the daughter of a woman who received diethylstilbestrol (DES) during pregnancy. Her applications were denied at all administrative levels, and upon reconsideration. Plaintiff filed a request for a hearing. A hearing was

held on March 4, 2010, before an Administrative Law Judge ("ALJ") at which the Plaintiff appeared and testified. A vocational expert (VE) testified during the hearing *via* telephone. The ALJ issued an unfavorable decision on April 16, 2010. (Tr. 14-23). The Appeals Council denied Plaintiff's request for review (Tr. 1-5), thereby making the ALJ's decision the Commissioner's final decision. Plaintiff sought judicial review in this court by the filing of a complaint on November 27, 2010.

## II. FACTUAL BACKGROUND

The Plaintiff was born on February 24, 1950, and was 50 years old at the time of the alleged onset date. She has a Ph.D. and past work experience as a child care director, college instructor, and guidance counselor. (Tr. 162).

## III. DISABILITY BACKGROUND

The Plaintiff's arguments consist of the following, quoted verbatim:

   (1)   The ALJ failed to evaluate the combined impact of Mrs. Muscarella's multiple impairments; and

   (2)   The ALJ failed to comply with SSR 96-7p.

(Plaintiff's brief).

In the decision of April 16, 2010, the ALJ found the following:

   1.   The claimant last met the insured status requirements of the Social Security Act on December 31, 2005.

   2.   The claimant did not engage in substantial activity during the period from her alleged onset date of November 2, 2000, through her date last insured of December 31, 2005 (20 CFR 404.1571 *et. seq.*).

3. Through the date last insured, the claimant had the following severe impairments: fibromyalgia, arthritis, cervical degenerative disc disease, and shoulder pain status post rotator cuff surgery times two (20 CFR §§ 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that, through the date last insured, the claimant had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a). The claimant has the following additional restrictions: a sit/stand option at will with no pushing/pulling with left arm; occasional climbing, balancing, stooping, kneeling, crouching and crawling; no overhead reaching or reaching with the left arm; and avoiding concentrated exposure to operational control of moving machinery, unprotected heights, and hazardous machinery.

6. Through the date last insured, the claimant was capable of performing past relevant work as a[n] elementary director, college instructor, counselor higher education, and guidance counselor. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity. (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 2, 2000, the alleged onset date, through December 31, 2005, the date last insured (20 CFR 404.1520(f)).

(Tr. 14-23).

The Commissioner argues that the ALJ's decision was based on substantial evidence and that the phrase "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 390-401, (1971). Under the Social Security Act, 42 U.S.C. § 405 (g), the scope of review of the Commissioner's final decision is limited to: (1) whether the decision of the Commissioner is supported by substantial

evidence and (2) whether the legal conclusions of the Commissioner are correct under controlling law. Myers v. Califano, 611 F.2d 980, 982-83 (4th Cir. 1988); Richardson v. Califano, 574 F.2d 802 (4th Cir. 1978). "Substantial evidence" is that evidence which a "reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 390. Such evidence is generally equated with the amount of evidence necessary to avoid a directed verdict. Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984). The Court's scope of review is specific and narrow. It does not conduct a de novo review of the evidence, and the Commissioner's finding of non-disability is to be upheld, even if the Court disagrees, so long as it is supported by substantial evidence. 42 U.S.C. § 405 (g) (1982); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

The general procedure of a Social Security disability inquiry is well established. Five questions are to be asked sequentially during the course of a disability determination. 20 C.F.R. §§ 404.1520, 1520a (1988). An ALJ must consider (1) whether the claimant is engaged in substantial gainful activity, (2) whether the claimant has a severe impairment, (3) whether the claimant has an impairment which equals a condition contained within the Social Security Administration's official listing of impairments (at 20 C.F.R. Pt. 404, Subpart P, App. 1), (4) whether the claimant has an impairment which prevents past relevant work and (5) whether the claimant's impairments prevent him from any substantial gainful employment.

Under 42 U.S.C. §§ 423 (d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

4

to last for a continuous period of not less than 12 months." See 20 C.F.R. § 404.1505(a); Blalock, 483 F.2d at 775.

If an individual is found not disabled at any step, further inquiry is unnecessary. 20 C.F.R. § 404.1503(a). Hall v. Harris, 658 F.2d 260 (4th Cir. 1981). An ALJ's factual determinations must be upheld if supported by substantial evidence and proper legal standards were applied. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

A claimant is not disabled within the meaning of the Act if she can return to her past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. SSR 82-62. The claimant bears the burden of establishing her inability to work within the meaning of the Social Security Act. 42 U.S.C. § 423 (d)(5). She must make a prima facie showing of disability by showing she was unable to return to her past relevant work. Grant v. Schweiker, 699 F. 2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy that the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. Id. at 191.

## IV. ARGUMENTS AND ANALYSIS

**Combination of impairments**

Plaintiff argues "[t]he ALJ in this case made no findings whatsoever regarding the cumulative effect of [her] multiple impairments, each of which is capable of causing severe pain and fatigue." (Plaintiff's brief, p. 6). Plaintiff asserts the ALJ summarily concluded that her impairments did not meet any listing and erred in failing to comply with the mandate of Walker v. Bowen, 889 F.2d 47 (4th Cir. 1989). Plaintiff contends that "[a] careful analysis of the limiting effects of her multiple impairments at the listing stage, and carried through to the RFC analysis would have led the ALJ to the conclusion that Mrs. Muscarella was not capable of returning to her past relevant work." (Plaintiff's brief, p. 7).

Defendant argues that the ALJ considered Plaintiff's impairments individually and in combination. Defendant contends that, unlike the ALJ in Walker, the ALJ in this case assessed a detailed RFC based on a detailed analysis of her various impairments "which shows that he accounted for Plaintiff's combination of impairments to the extent he found them supported by the record as a whole." (Def.'s brief, p. 11).

As set out above, the ALJ found in his decision that Plaintiff had the following severe impairments: fibromyalgia, arthritis, cervical degenerative disc disease, and shoulder pain status post rotator cuff surgery times two, but that she did not have an impairment or a combination of impairments listed in or medically equal to one listed in Appendix 1, Subpart. P, Regulation No. 4. (Tr.16-17). The ALJ also found that the record documents the Plaintiff was diagnosed and treated for migraine/cluster headaches, which were managed with medication so that there was "no evidence

of any significant functional limitations resulting from this condition, it is not a medically determinable severe impairment as defined under the regulations." (Tr. 16).

The role of the federal judiciary in reviewing decisions made under the Social Security Act is limited. See 42 U.S.C. § 405(g). The court must uphold the Commissioner's decision as long as it is supported by substantial evidence. Blalock, 483 F.2d at 775. In order for a reviewing court to determine whether the Commissioner based a decision on substantial evidence, "the decision must include the reasons for the determination . . . " Green v. Chater, 1995 U.S.App. LEXIS 21970, *7, 1995 WL 478032 (4th Cir.1995) (citing Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir.1986)). When dealing with a claimant with more than one impairment, the Commissioner "must consider the combined effect of a claimant's impairments and not fragmentize them." Walker v. Bowen, 889 F.2d 47, 50 (4th Cir.1989) (citations omitted). This requires the ALJ to "adequately explain his or her evaluation of the combined effects of the impairments." Walker, 889 F.2d at 50 (citing Reichenbach v. Heckler, 808 F.2d 309, 312 (4th Cir.1985)).

In Walker, the Fourth Circuit remanded plaintiff's claim because the ALJ failed to adequately consider and explain his evaluation of the combined effects of the claimant's impairments. See Walker, 889 F.2d at 49-50. The ALJ found that the claimant suffered from several ailments and noted the effect or non-effect of each impairment separately. See Id. The ALJ found that "the claimant did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1, Subpart P, Reg. No. 4. Walker, 889 F.2d at 49. The Fourth Circuit held that the ALJ failed to adequately consider and explain his finding because he did not analyze or explain his evaluation of the cumulative effect of the claimant's impairments. See Id. at 49-50.

In this case, the ALJ found at step three of the sequential evaluation that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526)." (Tr. 17). Unlike the ALJ in <u>Walker</u> and its progeny, the ALJ in this action discussed each of Plaintiff's impairments and performed a detailed RFC analysis that demonstrates the ALJ considered Plaintiff's impairments in combination. The ALJ's decision accounted for Plaintiff's combination of impairments in determining that Plaintiff had the RFC to perform sedentary work with the following restrictions: a sit/stand option at will with no pushing/pulling with left arm; occasional climbing, balancing, stooping, kneeling, crouching and crawling; no overhead reaching or reaching with the left arm; and avoiding concentrated exposure to operational control of moving machinery, unprotected heights, and hazardous machinery. The ALJ stated that in determining the RFC, he had carefully considered the entire record through the date last insured. Furthermore, in the decision, the ALJ stated the following with regard to his finding that she did not have an impairment or combination of impairments that met or medically equaled a listing:

> The claimant does not contend that any of her impairments meet a listing. Nevertheless, I have considered whether the claimant's impairments meet the criteria of any of the listed impairments, including impairments under sections 1.00 (musculoskeletal system). No treating or examining physician mentioned findings equivalent in severity to the criteria of any listed impairment. I note that while fibromyalgia does not have its own listing, after thoroughly reviewing all of the listings relevant to the claimant's complaints of joint pain, I have also found that the claimant's fibromyalgia does not medically equal any listing contained in the Listing of Impairments. I also considered whether the claimant's neck, back, shoulder, and upper extremity conditions meet Listing 1.02, 1.03 and 1.04 of the Listing of Impairments; however, the evidence failed to reveal any gross anatomical deformity or medically acceptable findings of medical imaging of joint space narrowing, bony destruction, or ankylosis of the affected joints which results in an inability to ambulate effectively; any involvement in one major peripheral joint in each upper extremity resulting in the inability to perform find and gross movements effectively; or a disorder of the spine resulting in compromise of a nerve root or the spinal cord

> with evidence nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis resulting in pseudoclaudication. In reaching the above conclusion, I have considered the opinions of the state agency medical consultants who evaluated this issue at the initial and reconsideration level of the administrative review process and reached the same conclusion (20 CFR 416.927(f) and Social Security Ruling 96-6p).

(Tr. 17).

Furthermore, in considering Plaintiff's credibility and determining her RFC, the ALJ stated as follows:

> In sum, I find the claimant is not fully credible and the above residual functional capacity sufficiently takes into account the combination of the claimant's physical impairments. While the claimant's cervical degenerative disc disease, fibromyalgia, arthritis, and status post bilateral the claimant's cervical degenerative disc disease, fibromyalgia, arthritis, and status post bilateral rotator cuff repair are severe impairments, as discussed above, her treatment has been essentially routine and/or conservative in nature and generally successful in controlling those symptoms.
>
> . . .
>
> Although the degree of the claimant's allegations of pain was not fully consistent with the record, I accorded the claimant the benefit of the doubt and reduced the residual functional capacity because of some measure of subjective pain to include significant limitations from the amount she can sit, stand, walk, lift, climb, balance, stoop, kneel, crouch, crawl, reach overhead, and push, pull, and reach with the left arm. . . .

(Tr. 22).

The court finds the ALJ's discussion and analysis to be sufficient to demonstrate that he considered Plaintiff's impairments in combination. The decision includes sufficient findings regarding the combination of her impairments for the court to properly review the ALJ's conclusion on this issue. See Thornsberry v. Astrue, C/A No. 4:08–4075–HMH–TER, 2010 WL 146483, *5 (D.S.C. Jan.12, 2010) (unpublished) ( "Accordingly, the court finds that while the ALJ could have been more explicit in stating that his discussion dealt with the combination of Thornsberry's impairments, his

9

overall findings adequately evaluate the combined effect of Thornsberry's impairments. Any error on the part of the ALJ in failing to use explicit language is harmless."). Though a more thorough analysis may be required in some cases, Plaintiff fails to demonstrate how any additional discussion could have produced a different result. Plaintiff does not point to any medical evidence which could demonstrate that the ALJ's analysis was not supported by substantial evidence. Thus, it appears that the ALJ did not err, and if he did, the error was harmless. See Robinson v. Astrue, 2011 WL 4368396 (D.S.C. Sept. 19, 2011).

**Credibility**

Plaintiff contends that the ALJ erred in his credibility assessment. Defendant argues the ALJ reasonably evaluated the credibility of Plaintiff's subjective complaints setting forth in his decision the proper standard for evaluating the credibility.

Under Craig v. Chater, 76 F.3d 585, 591-96 (4th Cir. 1996), subjective complaints are evaluated in two steps. First, there must be documentation by objective medical evidence of the presence of an underlying impairment that would reasonably be expected to cause the subjective complaints of the severity and persistence alleged. Not until such underlying impairment is deemed established does the factfinder proceed to the second step: consideration of the entire record, including objective and subjective evidence, to assess the credibility of the severity of the subjective complaints. See also 20 C.F.R. § 404.1529(b); Social Security Ruling (SSR) 96-7p, 61 Fed. Reg. 34483-01, 34484-85.

The ALJ may choose to reject a claimant's testimony regarding his pain or physical condition, but he must explain the basis for such rejection to ensure that the decision is sufficiently

supported by substantial evidence. Hatcher v. Sec'y, Dep't of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989) (quoting Smith v. Schweiker, 719 F.2d 723, 725 n. 2 (4th Cir. 1984)). "The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, 61 Fed. Reg. at 34486.

The ALJ found at Craig's step one that Plaintiff had impairments capable of producing the symptoms that she alleged and, accordingly, proceeded to step two. (Tr. 18). It is here that Plaintiff has an issue. A claimant's allegations about her pain "need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers[.]" Craig v. Chater, 76 F.3d 585, 595 (4th Cir. 1996).

Additionally, "[t]he only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994); see also Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) ("'Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility.'" (citation omitted)). The ALJ summarized Plaintiff's array of activities. (Tr. 20-21). See Johnson, 434 F.3d at 658 (noting that claimant's routine activities, including reading, cooking, exercising, attending church, cleaning house, washing dishes, doing laundry, and visiting, were inconsistent with her complaints).

In this case, Plaintiff's last date insured was December 31, 2005. The ALJ considered the medical evidence through the date last insured and discussed the medical records in detail. (Tr. 18-

19). The ALJ stated that while Plaintiff submitted additional medical evidence for the period following December 31, 2005, he found such evidence not material to the discussion of Plaintiff's disability stating they "do not show that the claimant's fibromyalgia, cervical degenerative disc disease, arthritis, and status post rotator cuff tear repair was more serious, during the period in question. . ." (Tr. 19).[1]

Here, regarding the Plaintiff's credibility, the ALJ concluded that Plaintiff's subjective testimony as to the extent of her pain and limitations was not credible to the extent it was not consistent with the RFC found by the ALJ. The ALJ concluded as follows:

> At the hearing, the claimant testified that she stopped working in November 2000 due to back pain. She stated that since then she has been diagnosed with fibromyalgia, arthritis, and had surgeries on both shoulders to repair rotator cuff tears. The claimant alleged she had a history of diethylstilbestrol (DES) which brought on her arthritic symptoms. She reported taking pain medications for 25 years for extreme pain in her back, hands, and feet. The claimant asserts that she also used a TENS until 2001 or 2002. She indicated that she had surgery on [her] left shoulder in 2002 and right shoulder surgery in 2004. The claimant asserted that she had relatively good use of the right shoulder from November 2000 until her shoulder surgery. She stated that prior to her DLI in 2005, she could not stand for long periods of time, sit for longer than one hour at t time, or push, pull, move, lift, or carry more than five pounds. The claimant stated that she moved to Texas in 2001 and then later moved from Texas to South Carolina. She reported that during these moves, she was only able to handle small lightweight things such as putting glasses in the cabinets, towels on the racks, and pillows in the pillowcases and wrapping up dolls and silverware. The claimant asserted that, as she traveled from Texas to South Carolina, she did not drive but sat in the passenger's seat. She stated that while they were in Texas she went to a family reunion and also visited her mother on one occasion.
>
> After careful consideration of the evidence, I find that the claimant's medically determinable impairment could reasonably be expected to cause some of the alleged symptoms; however, the statements by the claimant concerning the intensity,

---

[1] The ALJ noted that the medical evidence, subsequent to the date last insured, contained a report from Plaintiff's rheumatologist dated January 2006, reporting that her pain due to osteoarthritis was much better. In regards to her fibromylagia, it was noted that she had zero out of eighteen tender points, and her musculoskeletal examination was also completely normal.

persistence and limiting effects of these symptoms are not entirely credible to the extent they are inconsistent with the above residual functional capacity assessment. Specifically, the record does not substantiate the claimant's allegations as to the severely restricting nature of her musculoskeletal impairments noting that despite continued complaints of pain, she was nonetheless routinely described as "not in any apparent distress" when treated in February 2002, April 2003, June 2004, and November 2004. A review of the medical evidence, during the period at issue, fails to reveal any signs of muscular spasms, or change in weight, which may be reliable indicators of long-standing, severe or intense pain, and/or physical inactivity.

Moreover, the claimant has not required significant treatment for her allegedly disabling cervical degenerative disc disease, fibromyalgia, and arthritis and except for a few injections, the claimant's treatment has been essentially routine and/or conservative in nature. . . . in spite of her allegations of disabling pain, the claimant did not seek additional treatment including biofeedback or treatment from a pain clinic. Moreover, the medical records during the period at issue, do not show that the claimant regularly took narcotic pain-relieving medications. The record also reveals that the claimant failed to follow-up on recommendations made by the treating doctor, which suggests that the symptoms may not have been as serious as has been alleged in connection with this application and appeal.

Given the claimant's allegations of totally disabling symptoms, one might expect to see some indication in the treatment records of specific restrictions placed on the claimant by her treating physicians, during the period at issue; however, no restrictions were recommended. Despite the claimant's complaints of severe pain and functional limitations, the evidence reveals that she has retained a significant range of activities of daily living. Documentary evidence of record . . . in conjunction with the claimant's testimony indicated that she was doing a lot of writing and using a computer, attended a family reunion, visited her mother, traveled from Texas to South Carolina, and was able to pack household goods handling small light-weight objects to move her family to Texas in 2001 and then later from Texas to South Carolina, activities which are not limited to the extent one would expect, given her complaints of disabling symptoms and limitations. While I note that the claimant's ability to perform some physical tasks (at her own pace and in her own manner) is insufficient to establish that the claimant can engage in any substantial gainful activity, as noted in the claimant's activities as descried above, these activities rise above the ability to work only a few hours a day or to work only on an intermittent basis and indicate functional abilities substantially greater than those alleged. Given the claimant's daily activities; lack of frequent emergency room visits or hospitalization for pain; the lack of prescribed strong narcotic pain relievers; the lack of alternative treatment modalities for pain and lack of opinions from treating physicians as to residual functional capacity limitations during the period at issue, I find that the claimant's allegations are not entirely credible.

> I conclude the testimony of the claimant is not fully credible concerning the severity of her symptoms and the extent of limitations. Neither the severity nor the extent is supported by the objective medical evidence of record.

(Tr. 21).

The ALJ set out and discussed Plaintiff's medical records in support of his credibility determination. The ALJ concluded that even though Plaintiff had the medically determinable impairments that could reasonably be expected to cause the alleged symptoms, he found Plaintiff's statements concerning the intensity, persistence, and limiting effects of the symptoms were not credible to the extent they were inconsistent with the residual functional capacity assessment determined by the ALJ. Based on the evidence before the ALJ at the time of the hearing, the court concludes that the ALJ conducted the proper credibility analysis and cited substantial evidence to support his finding that Plaintiff's subjective complaints were not entirely credible.[2]

## V. CONCLUSION

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence. Richardson, 402 U.S. at 390. Even where the Plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. Blalock, 483 F.2d at 775. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion.

---

[2] The court remains mindful that its review is focused on whether the ALJ's opinion is supported by substantial evidence and that its role is not to "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

Shively v. Heckler, 739 F.2d at 989.  As previously discussed, despite the Plaintiff's claims, she has failed to show that the Commissioner's decision was not based on substantial evidence.  Based upon the foregoing, this Court concludes that the ALJ's findings are supported by substantial evidence.  Therefore, it is ORDERED that the Commissioner's decision be AFFIRMED.

    AND IT IS SO ORDERED.

s/Thomas E. Rogers, III<br>
Thomas E. Rogers, III<br>
United States Magistrate Judge

February 17, 2012
Florence, South Carolina